NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

| | | |
|---|---|---|
| CLAUDE J. KINNEY, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 01-5122 (GEB) |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | |
| JO ANNE B. BARNHART, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |
| | : | |

_____

**BROWN, Chief Judge**

     This matter comes before the Court upon the appeal of plaintiff Claude Kinney ("Plaintiff") from the Commissioner of Social Security's final decision that Plaintiff was not entitled to supplemental security income under the Social Security Act ("the Act"). This Court, exercising jurisdiction pursuant to 42 U.S.C. § 405(g), and having considered the parties' submissions without oral argument pursuant to Federal Rule of Civil Procedure 78, will deny Plaintiff's appeal.

**I. BACKGROUND**

     On or about March 30, 1999, Plaintiff filed an application for supplemental security income under Title XVI of the Act, alleging disability as of May 1, 1995. Record ("R.") at 66-67. On or about September 15, 1999, the Social Security Administration denied Plaintiff's claim. R. at 52-57. A request for reconsideration of this decision was denied on or about April 14, 2000. R. at 60-62. On or about April 20, 2000, Plaintiff filed a Request for Hearing by

Administrative Law Judge.  R. at 63.  On June 21, 2000, Administrative Law Judge ("ALJ")

Michael H. Noorigian conducted a hearing to determine whether Plaintiff was disabled and thus

entitled to benefits.  See R. at 16-49.

During questioning by the ALJ, Plaintiff testified that he last worked in the early 1990s

for AT&T, dealing with the computer tapes, but that this was only a temporary position he held

for about a month.  R. at 21-22.  Plaintiff then testified that he believed he could not presently

work due to depression that affects his attention span and causes mood swings.  R. at 22-23.

Plaintiff testified that the mood swings and anxiety attacks occur two or three times a day and

can lead to suicidal thoughts.  R. at 24-25.  Plaintiff further testified that he began seeing a doctor

for his depression.  R. at 25.

Plaintiff testified to a severe back injury in the lower lumbar region around March 1988.

R. at 26.  Plaintiff testified that the injury causes sharp pain in his back while sitting and

standing.  R. at 26-27.  Plaintiff testified that he can either sit or stand for approximately a half

hour to an hour and that lifting anything above five pounds is also a problem.  R. at 27.  Plaintiff

testified that he is taking medication for his back that helps with the pain, but that it makes him

drowsy.  R. at 28.  Plaintiff further testified that he has been seeing Dr. Laing for his back since

the injury.  Id.  Finally, Plaintiff testified to head injuries he received when he was assaulted in

April 1999 that Dr. Laing is also treating him for.  R. at 29.  Plaintiff testified that the assault

resulted in damage to his knee as well.  Id.

When questioned by his attorney, Plaintiff testified that he gets treated for his back every

two to three months.  R. at 29.  Plaintiff testified that he was diagnosed with permanent damage

to the lower lumbar region and that surgery might be diagnosed.  R. at 30.  Plaintiff testified that

he cannot go into a complete bend without pain.  R. at 31.  Plaintiff again testified that he could not sit for more than an hour straight, but that with sitting and standing he could sit for approximately two hours.  R. at 31.  Plaintiff testified that he can walk for only a block before feeling pain in his lower back and down his legs to his feet.  R. at 32.  Plaintiff testified that he was recently hospitalized for gout symptoms.  R. at 33.  He testified that gout causes arthritic symptoms in his foot to his arms and hands.  R. at 34.

Upon reexamination by the ALJ, Plaintiff testified that he lives alone and is usually bedridden.  Id.  Plaintiff testified that he has friends come by to cook him meals.  R. at 35.  Plaintiff testified that on visitation with his son on a weekly basis he goes to the movies or arcade or any activity that does not involve a lot of walking or standing.  R. at 35-36.  Upon reexamination by his attorney, Plaintiff testified that he can sit through a movie of an hour and a half in length in moderate comfort.  R. at 36.

The ALJ issued a decision on February 9, 2001, in which he determined that Plaintiff is not disabled within the meaning of the Act.  R. at 8-14.  The ALJ concluded that Plaintiff's residual functional capacity is not significantly limited by his impairments.  R. at 13.  The ALJ's opinion summarized all of the evidence in the record, which included Plaintiff's history of treatment for his lower back pain with Dr. Laing and a visit seeking behavioral health care, in addition to the testimony at the hearing.  R. at 11-13.  After consideration of the entire record, the ALJ made the following findings of fact and conclusions of law: 1) Plaintiff has not engaged in substantial gainful activity since the filing of his application; 2) Plaintiff has no medically determinable impairment; 3) Plaintiff has a herniated disc in addition to degenerative disc disease of the lumbar spine; 4) Plaintiff's testimony of pain and functional limitations cannot be accepted

3

as credible; 5) Plaintiff's impairments do not impose more than a slight limitation on his ability

to perform substantial gainful activity; and 6) Plaintiff is not disabled as defined in the Act.  R. at

14.

On or about March 15, 2001, Plaintiff requested that the Appeals Council review the

ALJ's decision.  R. at 6.  The Appeals Council denied the request on August 31, 2001.  R. at 3-4.

Plaintiff then filed the instant civil action with this Court, seeking review of the Social Security

Administration's denial of supplemental security income benefits.

## II. DISCUSSION

### A. Standard Of Review For Social Security Appeals

The Commissioner's decisions as to questions of fact are conclusive before a reviewing

court if they are supported by "substantial evidence in the record."  42 U.S.C. § 405(g); Knepp v.

Apfel, 204 F.3d 78, 83 (3d Cir. 2000).  "Substantial evidence" means more than "a mere scintilla.

It means such relevant evidence as a reasonable mind might accept as adequate."  Plummer v.

Apfel, 186 F.3d 422, 427 (3d Cir. 1999)(quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir.

1995)).  If the ALJ's findings of fact are supported by substantial evidence, this Court is bound

by those findings, "even if [it] would have decided the factual inquiry differently."  Fargnoli v.

Massanari, 247 F.3d 34, 38 (3d Cir. 2001)(citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir.

1999)).

The Third Circuit has made it clear "that determination of the existence *vel non* of

substantial evidence is *not* merely a quantitative exercise.  A single piece of evidence will not

satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by

4

countervailing evidence." <u>Kent v. Schweiker</u>, 710 F.2d 110, 114 (3d Cir. 1983).  The ALJ must

analyze all the evidence and explain the weight he has given to probative exhibits.  <u>Gober v.</u>

<u>Matthews</u>, 574 F.2d 772, 776 (3d Cir. 1978)(internal citation omitted).  As the Third Circuit has

held, access to the ALJ's reasoning is indeed essential to a meaningful court review.  <u>Fargnoli</u>,

247 F.3d at 42.  Nevertheless, the district court is not "empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder."  <u>Williams v. Sullivan</u>, 970 F.2d 1178,

1182 (3d Cir. 1992)(citing <u>Early v. Heckler</u>, 743 F.2d 1002, 1007 (3d Cir. 1984)).

     B.  <u>Standard For Awarding Benefits</u>

     A plaintiff may not receive benefits under the Act unless he or she first meets statutory

insured status requirements.  A plaintiff must be disabled, which is defined as the "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

An individual is not under a disability unless "his physical or mental impairment or impairments

are of such severity that he is not only unable to do his previous work but cannot, considering his

age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy, regardless of whether such work exists in the immediate area in

which he lives or whether a specific job vacancy exist for him, or whether he would be hired if he

applied for work."  42 U.S.C. § 423(d)(2)(A).

     Regulations promulgated under the Act establish a five-step process for an ALJ's

evaluation of a claimant's disability.  20 C.F.R. § 404.1520 (2005).  In the first step, the ALJ

must determine whether the claimant is currently engaged in "substantial gainful activity."  20

C.F.R. § 404.1520(a)(4)(i).  If the claimant is working and the work is a substantial gainful activity, his application for disability benefits is automatically denied.  Id.  If the claimant is not employed, the ALJ proceeds to step two and determines whether the claimant has a "severe impairment" or "combination of impairments."  20 C.F.R. § 404.1520(a)(4)(ii).  A claimant who does not have a "severe impairment" is not disabled.  Id.  Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets or is equal to those impairments listed in Appendix 1 of this subpart ("the Listing").  20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is conclusively presumed to be disabled, and the evaluation ends.  Id.; 20 C.F.R. § 404.1520(d).

If it is determined that the impairment does not meet or equal a listed impairment, the ALJ proceeds to step four, which requires a determination of: (1) the claimant's capabilities despite limitations imposed by an impairment ("residual functional capacity," or "RFC"); and (2) whether those limitations prevent the claimant from returning to work performed in the past ("past relevant work").  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is found capable of performing his previous work, the claimant is not disabled.  Id.  If the claimant is no longer able to perform his prior line of work, the evaluation must continue to the last step.  The fifth step requires a determination of whether the claimant is capable of adjusting to other work available in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  The ALJ must consider the RFC assessment, together with claimant's age, education, and past work experience.  20 C.F.R. § 404.1520(g).  Thus, entitlement to benefits turns on a finding that the claimant is incapable of performing her past work or some other type of work in the national economy because of her impairments.

The application of these standards involves shifting burdens of proof.  The claimant has

the burden of demonstrating both steps one and two, i.e., an absence of present employment and the existence of a medically severe impairment.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987).  If the claimant is unable to meet this burden, the process ends, and the claimant does not receive benefits.  <u>Id.</u>  If the claimant carries these burdens and demonstrates that the impairments meet or equal those within the Listing, claimant has satisfied her burden of proof and is automatically entitled to benefits.  <u>Id.</u>  If the claimant is not conclusively disabled under the criteria set forth in the Listing, step three is not satisfied, and the claimant must prove "at step four that the impairment prevents her from performing her past work."  <u>Id.</u>  Thus, it is the claimant's duty to offer evidence of the physical and mental demands of past work and explain why she is unable to perform such work.  If the claimant meets this burden, the burden of proof then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy."  <u>Id.</u>  The step five analysis "can be quite fact specific." <u>Burnett v. Commissioner</u>, 220 F.3d 112, 126 (3d Cir. 2000).

  C. <u>The ALJ's Decision Was Based Upon Substantial Evidence In The Record</u>

  Plaintiff specifically contests the ALJ's determination, at step two of the sequential evaluation process, that Plaintiff suffers no severe impairments, alleging that it was not based on substantial evidence.  Pl.'s Br. at 8.  Plaintiff focuses on the June 1998 MRI and asserts that his treating physician suspected that Plaintiff suffered from "lumbar radiculopthy."  <u>See</u> Pl.'s Br. at 13.  However, substantial evidence in the record demonstrates that the nature of Plaintiff's impairments support the findings made by the ALJ.

  As Plaintiff notes, an MRI in May 1995 suggested a congenitally diminutive spinal canal and disc herniation and an MRI in June 1998 showed disc herniation and degenerative disc

disease.  R. at 101-103.  Dr. Laing's notes in April 1999, however, state that there was "no objective evidence" of back pain.  R. at 96.  Furthermore, pursuant to that examination, Dr. Laing allowed only temporary disability at that point.  Id.  An MRI in May 1999 following the assault showed no abnormalities in Plaintiff's right foot, ankle, or knee.  R. at 100.  There is nothing further in the record to suggest a change in Plaintiff's condition from those diagnoses.

The ALJ noted the above documentation, in conjunction with other materials in the record, in reaching the determination that Plaintiff's allegations of disability were not supported by medical evidence.  R. at 11-13.  Although affirming that Plaintiff has been diagnosed with impairments, the ALJ found that there was no evidence that Plaintiff's impairments "impose more than a slight limitation on his ability to perform work related activities."  R. at 13. Specifically, the ALJ addressed the contradiction between Plaintiff's testimony and the medical evidence.  Id.  For instance, the ALJ noted Plaintiff's acknowledgment that he is able to travel by bus or taxi.  Id.  Furthermore, the ALJ noted Plaintiff's statement that his illness only minimally affects his ability to care for his personal needs in that he does his own shopping and is able to go to movies and arcades with his son.  Id.  Additionally, the ALJ reasoned that Plaintiff's claims that he is bedridden could not reasonably be attributed to any medical impairment because the complaints expressed at the hearing were not made to the doctors, as seen by Dr. Laing's notes. Id.  On this basis, the ALJ reasonably concluded that Plaintiff's testimony of pain and functional limitations could not be accepted as credible.

Therefore, Plaintiff has not demonstrated any evidence in the record that would contradict

the ALJ's cited documentation and ultimate findings.[1]  Accordingly, the Court finds that the ALJ rendered a decision based upon substantial evidence in the record and Plaintiff's appeal is denied.

## III.  CONCLUSION

For the reasons stated herein, Plaintiff's appeal is denied.  An appropriate form of order accompanies this Memorandum Opinion.

Dated: March 16, 2006

_____s/ Garrett E. Brown, Jr._____
GARRETT E. BROWN, JR., U.S.D.J.

---

[1] The ALJ also noted that there is no evidence that Plaintiff suffers from a medically determinable mental impairment.  Plaintiff does not challenge this finding on appeal and therefore the Court need not address the matter.